MOSKOWITZ & BOOK, LLP
345 Seventh Avenue, 21st Floor
New York, New York 10001
(212) 221-7999
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AARON HOFFNUNG, | Index No. |
| Plaintiff, | **COMPLAINT** |
| against – | |
| GOODNESS GROWTH HOLDINGS, INC. f/k/a VIREO HEALTH INTERNATIONAL, INC. and VIREO HEALTH, INC | |
| Defendants. | |

Plaintiff AARON HOFFNUNG, by his attorneys, Moskowitz & Book, LLP, as and for his Complaint against GOODNESS GROWTH HOLDINGS, INC. f/k/a VIREO HEALTH INTERNATIONAL, INC. and VIREO HEALTH, INC. (collectively, "Vireo" or "Defendants") alleges as follows:

### NATURE OF ACTION

1. The causes of action alleged herein are based upon Defendants' retroactive misclassification of Plaintiff as an independent contractor, rather than an employee.

2. Plaintiff is a former employee, officer, and director of Defendants. As a component of his compensation, Plaintiff was issued stock options.

3. The laws of the United States and Internal Revenue Code provide a company that wishes to issue stock options with two types of stock options to choose from.

1

Specifically, the company can issue either incentive stock options ("ISOs") or non-qualified stock options, which are sometimes called non-statutory stock options ("NSOs").

4. These two types of stock options are treated differently under the Internal Revenue Code. Specifically, the exercise of ISOs by an optionee is treated more favorably for tax purposes than the exercise of NSOs. NSOs are generally valued for tax purposes at an amount equal to the difference between the exercise price established by the stock option agreement and the fair market value of the shares on the date of exercise, and that value is immediately taxable as ordinary income. By contrast, ISOs are generally not taxed until the optionee sells or otherwise disposes of the shares, at which point the difference between the exercise price and sale price is taxable as capital gains, usually at a rate far lower than the rate applicable to ordinary income. Thus, from the point of view of the optionee, because of the special tax treatment ISOs receive, it is generally preferable to receive ISOs rather than NSOs.

5. However, the law sets forth strict requirements concerning when ISOs can be granted or exercised. For example, ISOs can be granted only to employees, and they must be exercised within three months following termination of employment—even if the former employee remains affiliated with the grantor in some other capacity. If the strict requirements applicable to ISOs treatment are not met, then the stock options must instead be treated for tax purposes as NSOs.

6. When Plaintiff exercised his stock options at the end of 2020 and in early 2021, Defendant was correctly treating Plaintiff as an employee by (i) withholding employee payroll taxes on biweekly basis (ii) providing benefits in the form of New York Family Leave Insurance (FLI) and State Disability Insurance (SDI) (iii) allowing for monthly stock

option vesting (iv) confirming the number of ISOs on record (v) accepting Written Notices to exercise ISOs (vi) not withholding taxes based on the "spread" between the grant price and the price of the stock on the exercise date as would have been appropriate with the exercise of NSOs.

7.      More than a year later, Defendant retroactively re-classified Plaintiff as an independent contractor, rather than an employee, effective prior to the dates on which he exercised his stock options.  As a result of that reclassification, Plaintiff's options were retroactively recategorized from ISOs to NSOs.  That recategorization created a substantial tax obligation that Plaintiff did not anticipate when he exercised the options, which were then considered ISOs, and that he would not have incurred if Defendant had continued to treat Plaintiff as an employee and the options as ISOs.  Indeed, Plaintiff would not have exercised those options had they not qualified for ISO treatment.

8.      Plaintiff now seeks a declaratory judgment that he was an employee of Defendant when he exercised his stock options and that those options therefore qualified as ISOs.  Plaintiff further seeks an equitable order directing Defendant retroactively to correct the incorrect classification of Plaintiff and to issue to Plaintiff an amended Form W-2 C along with Form 3921 and any other appropriate tax documentation reflecting that the options he exercised qualified as ISOs.  In the alternative, Plaintiff seeks an award of damages for Defendant's negligent misrepresentations that Plaintiff was an employee and that his stock options qualified as ISOs and for its breach of the Termination Agreement, in an amount calculated to compensate Plaintiff for the tax burden that arose because of those misrepresentations and that breach.  Plaintiff approximates his pre-tax damages at approximately $1,200,000.

**THE PARTIES**

9. Plaintiff Aaron ("Ari") Hoffnung is an individual resident of Bronx County, New York.

10. Defendant Goodness Growth Holdings, Inc. (formerly known as Vireo Health International, Inc.) is a foreign corporation, incorporated in and existing under the laws of the state of British Columbia, Canada, with its primary United States offices in Minneapolis, Minnesota.

11. Defendant Vireo Health, Inc. is a foreign corporation, incorporated in and existing under the laws of the state of Delaware, with its primary offices in Minneapolis, Minnesota.

12. Upon information and belief, defendant Vireo Health, Inc. is a wholly-owned subsidiary of defendant Goodness Growth Holdings, Inc.

13. Upon information and belief, neither of the Defendants is authorized to do business in New York pursuant to Business Corporation Law § 1301 *et seq*.

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and there exists complete diversity between the parties.

15. This Court is empowered to exercise personal jurisdiction over Defendants because Defendants are physically present in, and transact business in, the State of New York and because this dispute arises out of Defendants' employment of Plaintiff within the State of New York.

16. This Court is empowered to issue a declaratory judgment pursuant to 28 USC §§ 2201 and 2202.

17. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) because Plaintiff resides in this District, Defendants employed Plaintiff in this District, and a substantial part of the events that are the subject of the litigation transpired in this District.

**FACTS**

18. Vireo is a multi-state cannabis company that is licensed to grow, process, and/or distribute cannabis in eight state markets where cannabis has been legalized for medical or recreational use. The Company "manufactures proprietary, branded cannabis products in environmentally friendly facilities and state-of-the-art cultivation sites" and operates 18 dispensaries across the United States.

19. On or around November 5, 2015, Plaintiff became an employee of Vireo when he was hired as Chief Executive Officer of Vireo's wholly-owned New York State subsidiary, Vireo Health of New York, LLC (f/k/a Empire State Health Solutions, LLC").

20. Plaintiff worked primarily in Vireo's New York City offices located on 205 East 42nd Street in Manhattan.

21. As a component of his compensation as an employee of Vireo, Plaintiff was granted Restricted Unit Awards in Vireo Health, LLC, the predecessor to defendant Goodness Growth Holdings, Inc. (f/k/a Vireo Health International, Inc.), in November of 2015.

22. In 2016, Plaintiff took on an additional role of serving as Chief Operating Officer of the U.S. holding company, Vireo Health, Inc. (f/k/a Vireo Health, LLC).

23. Over time, Plaintiff became involved in nearly every facet of the Company's business and was responsible for managing more than 400 employees across the country and serving as an Officer and/or Director of more than a dozen subsidiaries, including those

focused on the Arizona, Maryland, Missouri, Massachusetts, Nevada, New Jersey, New Mexico, Pennsylvania and Puerto Rico markets.

24. In or around early 2018, Vireo Health, LLC reorganized in anticipation of becoming publicly traded in Canada and Vireo Health International, Inc. was formed.

25. As a part of the restructuring, in exchange for Plaintiff's Restricted Unit Awards in Vireo Health, LLC, and as a component of his compensation as an employee of Vireo, Plaintiff was granted stock options in Vireo Health International, Inc. Each of these grants was made in the form of an Incentive Stock Option Agreement made pursuant to Vireo Health International, Inc.'s Equity Incentive Plan.

26. Each of the Incentive Stock Option Agreements provided that the options granted would continue to vest only during the period in which Plaintiff remained an employee of Vireo.

27. In March of 2019, Plaintiff was instrumental in taking the international holding company Goodness Growth Holdings, Inc. (f/k/a Vireo Health International, Inc.) public by (i) raising more than $50 million through a brokered and non-brokered private placement offering and (ii) having its securities begin trading on the Canadian Securities Exchange under the ticker symbol "VREO" and (iii) serving as a Director on its board.

28. In October of 2019, Plaintiff was promoted to the role of Chief Strategy Officer of Goodness Growth Holdings, Inc. (f/k/a Vireo Health International, Inc.). In a press release announcing this news, the Company's Chief Executive Officer Kyle Kingsley, M.D. stated "Since joining in 2015, Ari has had a huge positive impact on Vireo's growth and success. As Chief Operating Officer, Ari's broad skill sets and leadership abilities helped us transform our business from a one-state operator into the impressive multi-state operator

we are today. I am confident that in his new role, Ari will continue to successfully guide our company through the rapidly evolving legislative and business landscapes."

29. In or about January 2020, Vireo was experiencing financial distress and forced to reduce costs by eliminating workforce positions and closing its New York corporate office. As a part of that process, Vireo requested, and Plaintiff agreed, that Plaintiff reduce his role at Vireo.

30. On or about March 4, 2020, Plaintiff and Vireo executed a certain Confidential Separation and Transition Services Agreement (the "Transition Agreement"). The Transition Agreement recited that Plaintiff was retroactively resigning as an "employee" of Vireo and various subsidiaries, *nunc pro tunc* to January 16, 2020, and that he ceased providing services as an officer and employee of Vireo on that date.

31. However, the Transition Agreement's recitation regarding Plaintiff's resignation as an officer and employee was illusory. The Transition Agreement obligated Plaintiff to provide up to ten hours per week of services, similar in nature to the services he provided since 2015, in exchange for ongoing bi-weekly wage payments during a twelve month period. The Transition Agreement further provided that Plaintiff was to continue (i) using his Company-owned laptop and related equipment to provide services to Defendants; and (ii) acting as the Chief Strategy Officer of Vireo Health, Inc. and as the Chief Executive Officer of Vireo Health of New York, LLC for a period of up to twelve months thereafter.

32. The Transition Agreement explicitly provided that Plaintiff's stock options would continue to vest during the twelve-month "transition" period, notwithstanding that the Incentive Stock Option Agreements by which those options were granted explicitly provide that they will continue vesting only while the optionee remains an employee.

33. After the effective date of the Transition Agreement and for the remainder of 2020 and through March of 2021, Vireo continued to treat Plaintiff as an employee. His bi-weekly salary payments continued to be issued through Vireo's payroll system. Vireo continued to withhold payroll taxes and other withholdings, including New York Family Leave Insurance (FLI) and State Disability Insurance (SDI), in the manner that is appropriate for an employee and that would not have been lawful or appropriate had Plaintiff been an independent contractor or been receiving severance payments without the provision of any services.

34. Throughout 2020, the terms and conditions of Plaintiff's work were those of an employee, not those of an independent contractor.

35. On October 5, 2020, Plaintiff resigned as Chief Strategy Officer and as a member of the Board of Directors of Vireo Health, Inc. but continued providing services to Vireo as required by the Transition Agreement. Vireo continued to treat Plaintiff as an employee, including by (i) withholding payroll taxes on a biweekly basis, (ii) providing benefits in the form of New York Family Leave Insurance (FLI) and State Disability Insurance (SDI), and (iii) allowing for ongoing stock option vesting.

36. Vireo issued Plaintiff a Form W-2 for 2020, consistent with his employee status. Vireo did not request a W9 or issue Plaintiff a Form 1099 for that year, as it would have been required to do had he been an independent contractor.

37. In November 2020, Plaintiff contacted the Company about exercising his vested stock options.

38. Because the tax laws and IRS regulations permit only $100,000 in ISOs to be issued in a given calendar year, and require that options in excess of that amount be treated as NSOs, Plaintiff asked Defendants to assist him in calculating exactly how many options from

each of the three grants he had been issued could be executed as ISOs, which required a calculation of the fair market value of the shares as of the dates on which the options were granted.

39. On November 18, 2020, Plaintiff sent his initial calculations of the fair market value of Vireo Health International, Inc. shares as of the dates of his stock options to Vireo's General Counsel and Chief Compliance Officer, Michael Schroeder, and asked Schroeder to confirm whether his calculations were correct.

40. On December 28, 2020, Mr. Schroeder responded by email, indicating that he had asked Sam Gibbons, Vireo's Vice President for Investor Relations, to confirm the number of options that could be executed as ISOs.

41. On December 29, 2020, Mr. Gibbons provided Plaintiff with Vireo's calculation confirming the number of options he could execute as ISOs, explaining that Vireo's calculations of fair market value differed slightly from the calculations previously circulated by Plaintiff, and that the number of options that Plaintiff could exercise as ISOs therefore was also slightly different than Plaintiff had previously calculated.

42. On December 29, 2020, in reliance on Vireo's representations concerning the number of options he could exercise as ISOs, Plaintiff provided Vireo with a Written Notice to Exercise 75,000 ISOs for a total of $14,250, which he immediately wired to the Company's bank account. Vireo treated the options exercised by Plaintiff as ISOs and did not withhold taxes based on the "spread" between the grant price and the price of Vireo's stock on the exercise date as would have been appropriate with the exercise of NSOs.

43. On January 4, 2021, in reliance on Vireo's representations concerning the number of options he could exercise as ISOs, Plaintiff provided Vireo with a Written Notice to Exercise

1,034,867 ISOs for a total of $238,631.51, which he immediately wired to the Company's bank account. Vireo treated the options exercised by Plaintiff as ISOs and did not withhold taxes based on the "spread" between the grant price and the price of Vireo's stock on the exercise date as would have been appropriate with the exercise of NSOs.

44.     On or about January 31, 2021, Vireo issued a Form W-2 to Plaintiff for 2020 which reflected that he had been an employee throughout that year, and that Vireo had withheld payroll taxes accordingly, along with deductions for New York Family Leave Insurance (FLI) and State Disability Insurance (SDI).

45.     On February 4, 2021, in reliance on Vireo's representations concerning the number of options he could exercise at ISOs, Plaintiff provided Vireo with a Written Notice to Exercise 920,628 ISOs for a total of $293,303.88, which he immediately wired to the Company's bank account. Vireo treated the options exercised by Plaintiff as ISOs and did not withhold taxes based on the "spread" between the grant price and the price of Vireo's stock on the exercise date as would have been appropriate with the exercise of NSOs.

46.     From January 1, 2021, through March 5, 2021, the Company continued to withhold payroll taxes and other withholdings, including New York Family Leave Insurance (FLI) and State Disability Insurance (SDI), in the manner that is appropriate for an employee and that would not have been lawful or appropriate had Plaintiff been an independent contractor or been receiving severance payments without the provision of any services.

47.     On April 19, 2021, Plaintiff, through a corporate entity, entered into a Consulting Agreement with a Vireo entity for the first time. Prior to that date, he never served as a consultant to Vireo, but only as an employee and was never asked to provide a W-9 form or issued a 1099.

48. On January 12, 2022, Vireo's Chief Administrative Officer & Director Amber Shimpa and Vireo's Assistant Controller Joe Duxbury informed Plaintiff that Vireo's auditors had discovered the Company made several mistakes, including stock option valuation and employee classification errors; that Vireo had retroactively determined that he was not an employee when he exercised his options in December 2020, January 2021 and February 2021; and that Vireo accordingly now considered all of his options to have been NSOs. Vireo further requested that Plaintiff remit to Vireo $135,000 to cover FICA taxes on the "income" it calculated he had earned in connection with the exercise of his options.

49. Specifically, Vireo falsely asserted—despite having issued Plaintiff a Form W-2 for all of 2020—that Plaintiff "was terminated as a W-2 earning employee in Q1 of 2020."

50. On or about February 1, 2022—just weeks after falsely asserting that Plaintiff ceased being an employee in Q1 of 2020—Vireo issued Plaintiff an incorrect Form W-2 for 2021 demonstrating its illogical and inconsistent treatment of Plaintiff's employee status. On one hand, the Form W-2 correctly classified Plaintiff as an employee by reporting employee payroll and benefit withholdings from Plaintiff's wages for the period from January 1, 2021 through March 5, 2021. On the other hand, the Form W-2 incorrectly classified Plaintiff as an independent contractor by treating all of Plaintiff's stock options as NSOs.

51. Because of Vireo's retroactive assertion that Plaintiff was not an employee, Plaintiff now faces an additional tax liability that he would not have incurred if Vireo had correctly treated him as an employee and his options as ISOs.

## VIREO'S FINANCIAL INCENTIVE TO TREAT OPTIONS AS INCENTIVE STOCK OPTIONS AT TIME OF EXERCISE

52. Upon information and belief, Defendants' business has been unprofitable and heavily reliant on the proceeds of debt and equity financing since its inception.

53. At the time the Plaintiff began inquiring about exercising his stock options in late 2020, Defendant's business was experiencing financial distress and in need of cash.

54. Plaintiff was required to wire more than $500,000 to Defendants' bank account in connection with his ISO exercises. Had Defendant informed Plaintiff that his stock options were NSOs he would not have exercised his options and Company would have been deprived $500,000 in cash that it critically needed at that time.

55. Throughout 2020, the Company suffered several executive departures, was forced to liquidate key assets, and dilute shareholders by selling additional equity to raise cash.

56. On March 10, 2020, Defendant announced through a press release a $10 million equity offering at a price of CAD $0.77 representing a decrease of more than 80 percent from the stock's March 20, 2019, opening price of CAD $5.65.

57. On June 12, 2020, Defendant announced through a press release the resignation of Bruce Linton, who was named the Company's Executive Chairman only a few months prior, as Board Member.

58. On June 22, 2020, Defendant announced through a press release the sale of its Pennsylvania cultivation business.

59. On June 29, 2020, Defendant announced through a press release the appointment of its third CFO is less than one year.

60. On October 1, 2020, Defendant announced through a press release the sale of its Ohio business.

61. On November 16, 2020, Defendant announced through a press release the sale of its Pennsylvania retail business.

62. On March 31, 2021, the Defendant submitted a Form 10-K Annual Report, for the fiscal year ended December 31, 2020, to the United States Securities & Exchange Commission, which indicated that the Company: (i) had incurred a net loss in 2020, under U.S. generally accepted accounting principles, of $22,942,194 (ii) anticipates requiring additional financing, (iii) may face difficulties acquiring additional financing, (iv) if unable to raise capital when needed, would be materially, adversely affected, and could be forced to reduce or discontinue its operations.

### FIRST CAUSE OF ACTION
### (Declaratory Judgment)

63. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

64. Plaintiff is entitled to a declaratory judgment that he was an employee of Vireo when he executed his ISOs and to an order requiring Vireo to amend and reissue all documentation necessary to establish that Plaintiff was an employee and that his stock options should be treated, for tax purposes, as ISOs.

### SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)

65. Plaintiff repeats and realleges the forgoing allegations as if fully set forth herein.

66. As the administrators of the Vireo Health International Inc. Equity Incentive Plan, of which Plaintiff was a participant and beneficiary, Vireo owed Plaintiff a fiduciary duty to act in the interest of plan participants. Vireo violated its fiduciary duty by misrepresenting the nature of the stock options Plaintiff was granted pursuant to that plan, including the extent to which those options could be exercised as ISOs rather than NSOs. Accordingly, once Vireo decided to provide

Plaintiff with information concerning the extent to which his stock options qualified as ISOs, it was obligated to do so accurately.

67. In December 2020, in response to Plaintiff's inquiry concerning the number of ISOs he could execute, Vireo provided Plaintiff with exact calculations as to the number of options he could execute as ISOs. Vireo knew, or should have known, that Plaintiff would rely on those calculations when determining whether to execute options, and how many options to execute.

68. Plaintiff thereafter executed options in reliance on Vireo's calculations concerning their qualifications for treatment as ISOs. But for Vireo's assurances that the options qualified for ISO treatment, Plaintiff would not have executed those options.

69. Because of Plaintiff's reliance on Vireo's assurances, he has incurred a substantial tax liability.

70. Accordingly, Plaintiff is entitled to damages in an amount sufficient to make him whole, which Plaintiff currently estimates at more than $1,200,000.

### THIRD CAUSE OF ACTION
### (Breach of Contract)

71. Plaintiff repeats and realleges the forgoing allegations as if fully set forth herein.

72. On March 4, 2020, Plaintiff entered into the Transition Agreement with Vireo, which obligated him to continue to provide services to Company in exchange for ongoing wage payments and vesting of stock options, all for up to a twelve-month period.

73. Plaintiff performed services for 12 months, similar in nature to the services he had provided since 2015.

74. Vireo made required wage payments and deducted all applicable payroll taxes through the end of March 2021, as more fully set forth above.

75. On or about January 31, 2021, Vireo issued a Form W-2 to Plaintiff for 2020 which reflected that he had been an employee throughout that year, and that Vireo had withheld payroll taxes accordingly, along with deductions for New York Family Leave Insurance (FLI) and State Disability Insurance (SDI).

76. Vireo breached the Transition Agreement by retroactively misclassifying Plaintiff as an independent contractor despite its promise to continue wage payments in exchange for continuing to provide services

77. Vireo incorrectly treated all of Plaintiff's stock options as NSOs when it misclassified him as an independent contractor, which caused a significant increase in Plaintiff's tax liability for the NSO options.

78. Because of Vireo's retroactive assertion that Plaintiff was not an employee, Plaintiff now faces an additional tax liability that he would not have incurred if Vireo had correctly treated him as an employee and his options as ISOs

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court order the following relief in favor of Plaintiff and against Defendants jointly and severally:

1. Declaratory judgment that Plaintiff was an employee of Defendants when he executed stock options, and requiring Defendants to issue appropriate paperwork and tax documentation demonstrating Plaintiff's employee status;

2. Damages in an amount to be awarded at trial;

3. Attorneys' fees in an amount to be determined at trial;

4. An award of prejudgment interest and costs; and

5. Such other and further relief that the Court may deem just and proper.

Dated: New York, New York
March 16, 2022

MOSKOWITZ & BOOK, LLP

By: /s/ Chaim B. Book
    Chaim B. Book
    Christopher R. Neff

*Attorneys for Plaintiff*
345 Seventh Avenue, 21st Floor
New York, New York 10001
(212) 221-7999